UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID H.,[1]

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

20-CV-6357-LJV
DECISION & ORDER

On June 1, 2020, the plaintiff, David H. ("David"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On January 28, 2021, David moved for judgment on the pleadings, Docket Item 12; on April 20, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 14; and on May 3, 2021, David replied, Docket Item 15.

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] David applied for both Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

For the reasons stated below, this Court grants David's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] The Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

**DISCUSSION**

David argues that the ALJ erred in determining his residual functional capacity ("RFC").[4]  Docket Item 12-1 at 1.  More specifically, David argues that the ALJ improperly discounted the opinion of Rhonda Peterson, M.D., as inconsistent with the record and therefore only partially persuasive.  *Id.* at 15.  David also argues that the ALJ did not identify any objective evidence that was inconsistent with Dr. Peterson's opinion.  *Id.* at 17.  This Court agrees that the ALJ erred, and, because the error was to David's prejudice, remands the matter to the Commissioner.

## I.   DR. PETERSON'S OPINION

When determining a claimant's RFC, "the Commissioner must consider all medical opinions" received. *Christopher M. V. v. Comm'r of Soc. Sec.*, 2021 WL 804258, at *3 (W.D.N.Y. Mar. 3, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. § 404.1520c(a)-(c))).  But under recent revisions to the Social Security regulations,[5]  the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]." 20 C.F.R. § 404.1520c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions."  *Id.* § 404.1520c(b).

---

[4] Residual functional capacity is defined as what a claimant is still able to do despite his or her limitations.  *See* 20 C.F.R. § 404.1545(a)(1).

[5] An ALJ's review of medical evidence for disability claims filed on or after March 27, 2017, is governed by 20 C.F.R. § 404.1520c.  *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment[s] and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in . . . [the claimant's] ability to perform [the physical and mental] demands of work activities." *Id.* § 404.1513(a)(2). The Code of Federal Regulations lists five factors that the ALJ must consider when considering medical opinions: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion. *Id.* § 404.1520c(c)(1)-(5).

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors"—because they are "the most important factors"—and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2); *see Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *7 (N.D.N.Y. Mar. 30, 2021) (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)); *Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021). "With respect to 'supportability,' the new regulations provide that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.' With

respect to 'consistency,' the new regulations prov[ide] that '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7-8 (W.D.N.Y. 2021) (alterations in original) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2)). "Both supportability and consistency in part require comparison of the medical opinions with other medical sources." *Mark K. v. Comm'r of Soc. Sec.*, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

Here, the record included three medical opinions. Amanda Slowik, Psy.D, and Oliver Fassler, Ph.D., opined about David's mental functioning, and the ALJ found these opinions to be persuasive.[6] Docket Item 11 at 28, 68, 319. Dr. Peterson opined largely about David's physical limitations and tangentially about his mental capacity. *Id.* at 796-98. The ALJ found Dr. Peterson's opinion to be only partially persuasive. *Id.* at 28.

The ALJ discounted Dr. Peterson's opinion because he concluded that "the level of restriction of functional ability [in Dr. Peterson's opinion wa]s not supported by the degree of treatment that [David] has received or his activities." *Id.* The ALJ then found that David had the residual functional capacity to perform light work but included several specific additional limitations. *Id.* at 22-23.

---

[6] Dr. Slowik's opinion included a section entitled "Medical History" which mentioned David's physical diagnoses, including degenerative disc disease, COPD, and carpal tunnel syndrome, but she did not opine about those conditions. *Id.* at 320. Instead, her observations, diagnoses, and recommendations were limited to David's mental state. *Id.* at 319-24. Dr. Fassler co-signed an assessment of vocational factors which limited David to light, unskilled work. *Id.* at 78-79. That was Dr. Fassler's only reference to David's physical capabilities or limitations.

There are several problems with the ALJ's analysis and the RFC that he formulated.  First, the ALJ failed to "compar[e Dr. Peterson's] medical opinion[] with other medical sources."  See Mark K., 2021 WL 4220621, at *4.  Especially because the new regulations no longer require the ALJ to assign specific weight to opinion evidence or, absent detailed analysis, to give controlling weight to the opinion of treating physicians, that error alone requires remand.  See 20 C.F.R. § 404.1520c(a) ("[The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [] medical sources."); see also Rivera, 2020 WL 8167136, at *14 ("If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases her explanation upon a misreading of the record, remand is required." (citing Andrew G., 2020 WL 5848776, at *9)).

What is more, other medical evidence was largely consistent with Dr. Peterson's opinion.  For example, both Dr. Peterson and Dr. Slowik noted that David's severe pain affected his concentration and attentiveness.  Id. at 322, 798.  Dr. Peterson opined that David could occasionally lift up to 20 pounds and could rarely reach his arms overhead, id. at 797-98; George Edward Vates, M.D., a neurosurgeon at University of Rochester Medical Center, id. at 259, noted David's difficulty lifting objects and raising his arms above his head, id. at 364.  Dr. Peterson found that David could rarely look down, turn his head right or left, or look up.  Id. at 797.  Chirag R. Patel, M.D., a pain management expert who treated David for "neck/back pain," id. at 663, likewise found David's range of motion in his neck to be limited in all directions, id. at 664.

The ALJ also did not address what Dr. Peterson "used to support [her] opinions and reach [her] ultimate conclusions."  Brianne S. v. Comm'r of Soc. Sec., 2021 WL

6

856909, at *5 (W.D.N.Y. Mar. 8, 2021) citing *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021).  And while the ALJ asserted that "the level of restriction of functional ability" in Dr. Peterson's opinion "is not supported by the degree of treatment that [David] has received or his activities," *see* Docket Item 11 at 28, her attempt to explain that conclusion does not pass muster.   The ALJ noted that David had "minimal" physical therapy, had not followed up on other treatment, and was told that his impairments were inappropriate for surgery.  *Id.*  But nothing about that is inconsistent with Dr. Peterson's findings that David could "sit[] and stand/walk for [only] about two hours during an eight-hour workday" and that he "could sit for fifteen minutes at one-time [sic] before needing to get up and stand for fifteen minutes at one time before [he] needed to sit down, walk around, etc."  *Id.*  Likewise, the fact that David "dabble[s] in auto mechanics, repair, and changing tires" is not inconsistent with Dr. Peterson's opinion that he can rarely reach or climb stairs and never twist.  *Id*.

In sum, the ALJ "failed to apply or even consider the supportability [and consistency] factor[s]."  *Cuevas*, 2021 WL 363682, at *14.  That was error.  *See id.* at *15 ("Because the ALJ failed to address the supportability factor . . . the ALJ committed legal error by failing to apply the proper legal standards in the form of the post-March 26, 2017 SSA regulations."); *cf. Jacqueline L.*, 2021 WL 243099, at *6 ("As required by the new regulations, the ALJ explained his findings regarding the supportability and consistency for each of the opinions, pointing to specific evidence in the record supporting those findings.").  And the reasons she gave for discounting Dr. Peterson's opinion were error as well.

7

Perhaps most basically, the ALJ erred in formulating very specific limitations in the RFC from whole cloth without any medical support.  For example, contrary to Dr. Peterson's more restrictive opinion, the ALJ found that David could do light work except that he would need a "one to two minute" break "after standing or walking for thirty minutes"; could "occasionally stoop, balance, crouch, crawl, kneel, and climb stairs and ramps"; and could "frequently reach."  Docket Item 11 at 22-23.  Those restrictions are quite specific, but they are inconsistent with and less restrictive than those in Dr. Peterson's opinion, and there is no medical opinion behind them; therefore, they must be the product of the ALJ's own lay judgment.  And the new regulations do not change the rule that specific restrictions like these must come from a medical opinion, not from the ALJ's lay opinion.  *See Linda L. v. Comm'r of Soc. Sec.*, 2021 WL 4147062, at *5-6 (W.D.N.Y. Sept. 13, 2021) (finding that the ALJ improperly formulated the claimant's RFC based on the ALJ's own lay opinion which contradicted the medical opinions of record).

Finally, the ALJ's several errors likely prejudiced David.  Dr. Peterson diagnosed David with severe intervertebral disc disease and assessed his prognosis as poor.  Docket Item 11 at 796.  As the ALJ noted, Dr. Peterson detailed David's limitations in walking, sitting, and standing during the workday, including his need for frequent breaks.  *Id.* at 28.  She limited him to rarely climbing stairs, reaching, or turning his head right or left or up or down*.  Id.*  And she found that his "constant pain and other systems [sic] are severe enough to interfere with attention and concentration needed to perform even simple work tasks."  *Id*.

8

Had the ALJ properly compared Dr. Peterson's opinion with the other opinions and medical evidence and evaluated it in light of the medical evidence supporting it, that might well have resulted in an RFC that rendered David disabled.  That warrants remand here.  *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ").

## **CONCLUSION**

This Court therefore remands the matter so that the ALJ can appropriately address the supportability and consistency of Dr. Peterson's opinion and formulate an RFC with limitations grounded in the medical evidence.  The Commissioner's motion for judgment on the pleadings, Docket Item 14, is DENIED, and David's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


    SO ORDERED.

Dated:    November 18, 2021
             Buffalo, New York


      */s/ Lawrence J. Vilardo*
      LAWRENCE J. VILARDO
      UNITED STATES DISTRICT JUDGE